KROUSE et al. v. BREVARD TANNIN CO. et al.

(Circuit Court of Appeals, Fourth Circuit. February 5, 1918.)

No. 1563.

1. CORPORATIONS ⬳211(6)—STOCKHOLDER'S SUIT—SUFFICIENCY OF BILL—
JURISDICTIONAL ALLEGATIONS.

Equity rule 27 (198 Fed. xxv, 115 C. C. A. xxv), prescribing the juris-
dictional requisites of a stockholder's bill, as has been stated by the
Supreme Court, which framed it, "is intended to have a practical opera-
tion, and to have that it must as to its requirements be given such play as
to fit the requirements of different cases." If the allegations of the
bill are deemed too general by defendants, their remedy is by motion for
further and better particulars under rule 20 (198 Fed. xxiv, 115 C. C. A.
xxiv); but the requirement that the bill set forth with particularity the
efforts of plaintiff to secure such action as he desires does not apply,
where the allegations clearly show that by reason of antagonistic con-
trol of the corporation such efforts would have been futile.

2. CORPORATIONS ⬳211(6)—STOCKHOLDER'S SUIT—SUFFICIENCY OF BILL.

A stockholder's bill *held* to state facts sufficient to entitle complain-
ants, as minority stockholders, to invoke the jurisdiction of a court of ·
equity.

3. CORPORATIONS ⬳210—STOCKHOLDER'S SUIT—PARTIES.

A suit in a federal court by minority stockholders against the cor-
poration, which is a corporation of the state, having its property and
business therein, and the managing director, who is also a citizen and
· resident of the state, in which the bill alleges transactions by the di-
rectors, who are also the principal stockholders, by which the corporation
has been defrauded of property for their individual benefit; should not be
dismissed on motion because the other directors are not parties, where
by reason of their being out of the jurisdiction they cannot be served,
and if brought in their joinder would oust the jurisdiction of the court.
In such case, such directors, while proper, are not indispensable, parties,
even though full relief as to all the transactions alleged cannot be granted
without their presence, and the court, having jurisdiction over the cor-
poration and its property, may and should, under equity rule 39 (198
Fed. xxix, 115 C. C. A. xxix), and Judicial Code (Act March 3, 1911, c.
231) § 50, 36 Stat. 1101 (Comp. St. 1916, § 1032), proceed without them,
and grant such relief as the proofs may warrant and as is within its
power.

4. COURTS ⬳347—UNITED STATES COURTS—PROCEDURE—MOTION TO DISMISS
BILL.

While it is within the discretion of the court to entertain a motion to
dismiss a bill for want of equity apparent upon its face, made under
equity rule 29 (198 Fed. xxvi, 115 C. C. A. xxvi), at any time before the
hearing, the rule contemplates that it be made before the answer is filed,
and if made afterward it must be determined on the allegations of the
bill, without aid from the denials or allegations of the answer.

Appeal from the District Court of the United States for the Western
District of North Carolina, at Asheville; James E. Boyd, Judge.

Suit in equity by Charles C. Krouse and Louis T. McFadden against
the Brevard Tannin Company and William F. Decker. From a decree
dismissing the bill, complainants appeal. Reversed.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Mark W. Brown, of Asheville, N. C. (Clarence E. Sprout, of Williamsport, Pa., and John E. Cupp, of Philadelphia, Pa., on the brief), for appellants.

Duff Merrick and F. A. Sondley, both of Asheville, N. C., for appellees.

Before KNAPP and WOODS, Circuit Judges, and CONNOR, District Judge.

CONNOR, District Judge. Plaintiffs are citizens and inhabitants of the state of Pennsylvania. Defendant Brevard Tannin Company is a corporation chartered pursuant to the laws of North Carolina, January 13, 1903, conducting its corporate business in the Western district of said state. Defendant, Wm. F. Decker, is a citizen and inhabitant of the same state.

Plaintiffs, in their bill, allege: That the objects and purposes for which defendant corporation was formed are: To erect and operate factories for the manufacture of tanning extracts, and other extracts obtained from trees, bark, leaves, plants, etc. To conduct a general tanning business, manufacturing leather and leather goods and other products made from skins, hides, and peltry of animals. To deal in all kinds of timber, logs, wood, barks, etc., and to manufacture them into all kinds of marketable products and commodities. To manufacture, buy, sell, and otherwise deal in extracts, oils, fertilizers, glue, etc. That the authorized capital stock of said corporation is $500,000, divided into shares of $100 each, one half to be preferred and the other half common stock. That, of the authorized issue, 1,750 shares of preferred and 1,250 shares of common stock has been issued. That Edward D. Adams owns 1,100 shares preferred and 620 shares of common stock. That George L. Adams owns 335 shares preferred and 311 shares of common stock. That defendant W. F. Decker owns 100 shares preferred and 100 shares common stock. Plaintiff Chas. C. Krouse owns 42 shares preferred and 41 shares of common stock. Louis T. McFadden owns 49 shares preferred and 41 shares common stock. George L. Adams, Edward D. Adams, and Wm. F. Decker are, and have been since its organization, directors of the company. George L. Adams is, and has been since its organization, president; Wm. F. Decker, secretary and treasurer and manager of the company.

As grounds of complaint, and the basis upon which complainants seek the intervention of the court and relief against the alleged wrongful conduct of the majority stockholders, directors, and managing officers of the company, the plaintiffs, among other things, allege: That they have, at all times, refused to permit plaintiffs to have any voice in the control and management of the company. That Edward D. Adams has never attended a meeting of the board of directors, never visited the plant, or given any attention to the affairs of the company, but has willfully neglected and carelessly absented himself from the meetings of the board of directors. Practically the same complaint is made of Geo. L. Adams, another director, with the result "that the business is deteriorating" in a number of respects, pointed out in the bill. That the said directors, being also the managing officers, with in-

tention of defrauding the Brevard Tannin Company and the complainants, caused to be issued and delivered to the said W. F. Decker, one of the directors aforesaid, 100 shares of the common stock of the company, for which no consideration passed from the said parties to the company, "but the same was issued and delivered to the said Wm. F. Decker as a part of an unlawful and fraudulent agreement between the said Edward D. Adams, Geo. L. Adams, and Wm. F. Decker, as hereinafter set out." That on the 15th day of March, 1913, the said Edward D. and George L. Adams and Wm. F. Decker caused a deed to be executed of the company to John W. McMinn, for the nominal consideration therein expressed of $10, conveying to said McMinn certain tracts of land described in an exhibit attached for the real consideration of $27,000. That there was no warrant or authority given to the said parties to make such sale, but that it was made at a grossly inadequate price, to the great prejudice of the company. That on October 28, 1912, defendant Wm. F. Decker, director of said company, entered into a contract with one Louis Carr, afterwards assigned to the Carr Lumber Company, by which said Decker was to receive all of the wood usable in making tanning extracts from a tract of land containing 69,000 acres, a part of the Vanderbilt estate. That an interest in the said contract was subsequently assigned by Decker to George L. Adams. That in making said contract Decker was acting for and in behalf of the stockholders of the Brevard Tannin Company, and said contract was in fact made by Decker with Carr, for the use and benefit of the said company. That the contract was made in his own name, and he has refused and neglected, and still refuses and neglects, to assign the same to the company. That the contract was taken in the name of Decker, pursuant to a fraudulent agreement and understanding between said Edward D. and Geo. L. Adams and Decker. That by the sale of the land to McMinn the company was denuded of all woodland which it then owned, and all of its available wood supply in that vicinity taken from it. That the issue of the 100 shares of stock to Wm. Decker was made in consideration of the promise of said Decker to supply the company with wood from the Vanderbilt tract. That he is not now able, nor has he been able since the execution of said contract, to supply the company with wood, except by virtue of the acquiescence of the Champion Fibre Company, to which said Decker has sold all of the wood to be taken from the Vanderbilt tract, to the extent of his capacity to produce during the whole period of his contract with said Louis Carr.

The bill charges: That Wm. F. Decker embezzled and converted to his own use $93.11 of the money of the defendant company. That he forged the name of one John Morris upon a check drawn by said company for $337.75, appropriating the amount to his own use. That said Decker fraudulently appropriated other money belonging to said company to his own use, giving particulars thereof—all of which acts on the part of Decker were well known, or should have been known, to said Edward D. and Geo. L. Adams. That Decker cut wood from the lands of the company, and sold same, of the value of $456, to the Champion Fibre Company, which he converted to his own use.

That by reason of the negligence,.carelessness, and inattention of the business of the said directors and managing officers the stockholders of the company have been damaged, the property allowed to depreciate and decay, its business permitted to be dissipated, so that the company has lost approximately the sum of $50,000 a year during the year 1915, and during the year 1916 the sum of $100,000 per year, etc.

For the purpose of meeting the jurisdictional requirements of equity rule 27 (198 Fed. xxv, 115 C. C. A. xxv; Hopkins, Eq. Rules [2d Ed.] 172), complainants allege: That they were shareholders of the company at the times of the transactions mentioned, of which they complain. That the suit is not a collusive one to confer jurisdiction on the District Court of the United States for the Western District of North Carolina, of which said court would not otherwise have jurisdiction, but is instituted in good faith for the purposes herein stated. That they brought the transactions of which they complain to the attention of said Edward D. Adams, Geo. L. Adams, and Wm. F. Decker, as officers and directors of said Brevard Tannin Company, so they would have full opportunity to redress said wrongs; but said officers and directors failed and refused so to do, and assumed the same antagonistic and partisan attitude as that theretofore manifested by them towards plaintiffs.

The bill prays that process issue to the defendant company and to Wm. F. Decker. The other directors are not within the jurisdiction of the court and are not joined as defendants. They pray that a receiver be appointed to preserve the property of the company until the final decree, and for such other and further relief as the nature and circumstances of the case require, etc.

Defendants filed joint answer, denying all of the material allegations of the bill, setting out, by way of exhibits, the contracts referred to and the correspondence between complainants and the officers and directors of the company. The record states that, after the bill and answer had been filed, and after depositions had been taken by defendants, on the merits of the suit, and after said action had been set down for hearing, defendants orally moved to dismiss the bill upon the ground that it did not allege facts sufficient to constitute a cause of action, and upon the further ground that it appeared from the bill that Geo. L. Adams and Edward D. Adams were indispensable parties defendant and that they were without the jurisdiction of the court, and if they were made parties defendant the jurisdiction of the court would be ousted, because of the citizenship of the said George L. and Edward D. Adams; and it was upon this motion that the final decree was entered. This statement is signed by the District Judge. The decree dismissing the bill recites the motion and:

"That the court is of opinion that said bill fails to properly allege facts sufficient to constitute the cause of action therein attempted to be set up, and said bill is therefore hereby dismissed."

[1] The brief, and oral argument of defendants, challenge the right of the complainants to invoke the equitable power of the court, because they have not complied with the requirements of equity rule 27. As this question lies at the threshold of the discussion, it should be

disposed of before the sufficiency of the bill, in other respects, is considered.

The rule prescribing the allegations which are required to be made, in bills brought by stockholders in such cases, was first formulated in 1882 and known as equity rule 94, in accordance with the conclusion reached by the courts as the result of former decisions. Hawes v. Oakland, 104 U. S. 450, 26 L. Ed. 827. In the new equity rules of 1912 it is No. 27. 226 U. S. 656, 33 Sup. Ct. xxv; Hopkins, New Fed. Eq. Rules, Annotated (2d Ed.) 172. The only addition made to the original rule are the words at the end, "or the reasons for not making such effort." 213 U. S. 435, 29 Sup. Ct. 540, 53 L. Ed. 862. The bill, in regard to the sufficiency of the allegation required, of the particularity of the efforts of the plaintiffs to secure such action as they desired on the part of the managing directors and, "if necessary, of the shareholders," is critically analyzed. It is insisted, and authorities cited to maintain the contention, that the averments made by complainants that "they brought the transactions of which they complain to the attention of the directors," etc., does not meet the requirements of the rule; that the complainants should have set forth the time and place, the specific manner in which the efforts were made, etc. It is further objected to the sufficiency of the averment that complainants were shareholders at the time of the transactions complained of; that they should have stated the dates upon which they became shareholders.

In regard to the criticism of the bill upon the first ground, it would seem that if the directors were informed of the conduct complained of, and an opportunity given them to investigate the truth of the charges, and they failed and refused to do so, or to take any action in regard thereto, the spirit of the rule was complied with. While it may be that complainants should have alleged the date upon which they became shareholders, the remedy for their failure to do so was to move the court, as permitted by rule 20 (198 Fed. xxiv, 115 C. C. A. xxiv), that "further and better particulars" in this respect be furnished. This is a new rule, based upon the English practice. A number of defendant's grounds of objection to the bill would have been met by its application. The purpose and scope of the rule—construed in the light of decisions of the English Court of Chancery—is discussed in an enlightening and interesting manner by Judge Dayton (D. C. N. D. W. Va.) in Whitaker v. Whitaker Iron Co., 238 Fed. 980. The principle upon which rule 94 (27) is founded, before its adoption, and the rule itself, has been discussed and construed in a large number of cases in the federal courts. Many of them are cited in the briefs of counsel in this case. While the underlying thought upon which the rule is based is well understood, of necessity its application is, to a large extent, dependent upon the facts developed in each case. "Rule 94 is intended to have practical operation, and to have that it must, as to its requirements, be given such play as to fit the conditions of different cases." Del. & Hudson Co. v. Albany & Sus. R. R. Co., 213 U. S. 435, 29 Sup. Ct. 540, 53 L. Ed. 862. In that case the questions certified to the court present, in a large measure, the contentions made in this appeal. The rule is quoted—the last clause—prescribing the

necessity for setting forth, with particularity, the efforts of plaintiffs to secure action on the part of the managing directors or trustee, and, if necessary, of the shareholders, and the causes of their failure to obtain such action, constituted the debated point in the case. Mr. Justice McKenna, in an enlightening opinion, discusses the decisions and principles involved, saying:

"The purpose of the rule hardly needs explanation. It is intended to secure the federal courts from imposition upon their jurisdiction and recognizes the right of the corporate directory to corporate control; in other words, to make the corporation paramount, even when its rights are to be protected or sought through litigation. Cases in this court have indicated such right. But the directory may be derelict and the interest of stockholders put in peril, and a case hence arises in which the right of protecting the corporation accrues to them. Rule 94 (27) expresses primarily the conditions which must precede the exercise of such right, but emergencies may arise in which the antagonism between the directory and the corporate interest may be unmistakable, and the requirements of the rule may be dispensed with, or it is more accurate to say, do not apply."

After citing cases, in which the requirements of the rule were enforced, the learned justice cites as an illustration of the cases, "where the circumstances take the cases out of the rule." Doctor v. Harrington, 196 U. S. 579, 25 Sup. Ct. 355, 49 L. Ed. 606. After stating the essential allegations in the bill in that case, he says:

"It will be observed, therefore, that there was no compliance with the requirements of rule 94 (27), as expressed in its letter. The efforts that were made to secure the action of the managing directors or trustees were not 'set forth with particularity.' Nothing was alleged but the domination of John J. Harrington and his control of the directors. What he did, and in what way he exerted control, was not alleged. In other words, the bill seemed to show a case, not of compliance with the requirements of rule 94 (27), but circumstances which excused from such compliance. * * * And we decided that these principles (upon which the rule was based) were satisfied by the allegations of the bill and that such antagonism existed between the complainants in the suit and the directors of the corporation that they would suffer irremediable loss if not permitted to sue. In other words, complainants were in such a situation by reason of the power which Harrington possessed over * * * the corporation—directors and stockholders—that appeals to them for action would have been futile."

Almost every suggestion made in this case is made and disposed of in the opinion in that case. A few illustrative cases may be cited:

"Equity rule 27, * * * which requires certain preliminary steps to be taken by the stockholder before bringing his suit, will be dispensed with when the interests of the directors are antagonistic to those of the corporation, where this fact is shown by the pleadings." Ogden v. Gilt Edge Consol. Mines Co. (C. C. A. 8th Cir.) 225 Fed. 723, 140 C. C. A. 597:

"The bill alleges that plaintiff has not made request of the officers and directors to bring the action because of the fact that such request would be a useless and idle performance, and that the defendants McKinney and associates, who made the contract, and benefit by it, are in the absolute control of the affairs of Quinescec. The record fully sustains these allegations. The requirement of equity rule 27, in the respect referred to, was thus met."

An exhaustive review of the recently decided cases in Heinz v. Nat. Bank of Commerce, 237 Fed. 942, 150 C. C. A. 592, relieves us of the necessity of doing more than refer to the opinion of Judge Booth in that case. In Wathren v. Jackson Oil & Refining Co., 235

U. S. 636, 35 Sup. Ct. 225, 59 L. Ed. 395, Mr. Justice Hughes, in pointing out the respects in which the bill failed to comply with the rule, says:

"Nor does it appear that, by reason of antagonistic control of the corporation, such a request would be futile."

There the plaintiff was the holder of a majority of the stock,—no suggestion of fraud is made. The class of cases coming within the exception to the rule is stated by Mr. Justice Brandeis in United Copper Co. v. Amal. Copper Co., 244 U. S. 261, 37 Sup. Ct. 509, 61 L. Ed. 1119, as when the directors "stand in a dual relation which prevents an unprejudiced exercise of judgment," or "that such application would be futile (as when the wrongdoers control the corporation)." The allegations in the bill, which, upon its motion, defendants admit to be true, bring the case clearly within the cases to which, as said by Mr. Justice McKenna, "the rule does not apply."

[2] We are thus brought to consider the challenge made to the bill and sustained by the court—that it does not sustain facts sufficient to constitute a cause of action, or to entitle the complainants to seek any relief in a court of equity. It is true that the specific relief demanded is the appointment of a receiver; but the court is not compelled to grant the prayer, but may, upon the proofs adduced, either dismiss the bill for failure of proof, or grant such relief as, upon the allegation and proof, the complainants show themselves entitled to. If, as alleged and admitted by the motion to dismiss, the managing officers, being also the majority shareholders, have conducted the affairs of the corporation, conveyed its property, made contracts, as alleged—committed other acts prejudicial to the interests of the complainants, minority stockholders—it would seem that a court of equity should take cognizance at least to the extent of investigating and ascertaining the truth in regard to the transactions set forth in bill. It may be that, upon full investigation, the defendants will be able to show that the plaintiffs are making a false clamor, and that they have no ground for complaint. It appears that an answer was filed and depositions taken by defendants before the motion to dismiss was made. It would seem more in accordance with the course usually pursued by courts of equity that the cause should proceed to a hearing rather than at this stage of the proceeding a motion to dismiss allowed. We are of the opinion that there was error in holding that the bill did not allege facts sufficient to entitle plaintiffs to invoke the jurisdiction of the court.

[3] It is said, however, that Edward D. Adams and George L. Adams are indispensable parties defendant, and that, if brought into the case as defendants, the jurisdiction of the court would be ousted. While, as provided by rule 29 (198 Fed. xxvi, 115 C. C. A. xxvi), the motion to dismiss may be made for nonjoinder of essential parties, the practice of courts suggest, not a decree dismissing the bill, but an order to make such parties. It is insisted that this would not help the complainants, because, as George L. Adams is a citizen and resident of Pennsylvania, the residence of complainants, upon being brought into the record, a case would be created wherein complainants and

one of the defendants are citizens and residents of the same state. Rule 39 (198 Fed. xxix, 115 C. C. A. xxix; Hopkins, New Fed. Eq. Rule 204) provides that:

"In all cases where it shall appear to the court that 'persons who might otherwise be deemed proper parties to the suit cannot be made parties by reason of their being out of the jurisdiction of the court, or incapable otherwise of being made parties, or because their joinder would oust the jurisdiction of the court as to parties before the court, the court may, in its discretion, proceed in the cause without making such persons parties; and in such. case the decree shall be without prejudice to the rights of the absent parties."

See, also, Judicial Code, § 50.

Are Edward D. Adams and Geo. L. Adams necessary, or indispensable, or only proper, parties? For an interesting discussion and analysis of decided cases regarding this question, which has given to federal courts much concern, see Street's Fed. Eq. Prac. vol. 1, § 502 et seq. It may be conceded that, if Edward D. and George L. Adams are indispensable parties, within the definition found in well-considered opinions of the Supreme Court, the bill must be dismissed. It is not within the saving provisions of equity rule 39, or section 50 of the Code. The corporation is a party defendant, served with process on its secretary and treasurer, and one of the directors, Wm. F. Decker, individually, also is a party. It is insisted that, because the other two directors, nonresidents, who have willfully and negligently failed to discharge their manifest duties as directors, and have either knowingly or fraudulently permitted its managing officer to make contracts in fraud of, and prejudicial to, its property and interests, and embezzle its funds, are not made parties because service cannot be had on them, the court had no power to make any decree for the protection of the property or the rights of the shareholders. We are unable to perceive why, with the corporation and its managing director, secretary, and treasurer, under whose control the property is found, as parties to the suit, a decree may not be made appointing a receiver of the property, with direction that he bring such actions, or suits in equity, against the directors, or other persons, as may be necessary to protect its interests. Whether in this suit decrees may be made, regarding the transactions set out in the bill of which plaintiffs complain, in the absence of Edward D. and George L. Adams, is not necessary to decide. If the court has before it the necessary parties to enable it to grant any. substantial relief, the bill should not be dismissed. While it is true that, in the absence of George L. Adams, a decree cannot be made giving relief to the company for the wrong sustained on account of the matters alleged in regard to the contract made with Louis Carr, and alleged to have been assigned to Geo. L. Adams, pursuant to a fraudulent agreement between Edward D. Adams, Geo. L. Adams, and W. F. Decker, the fact that the contract was made and assigned to Geo. L. Adams, under the circumstances alleged, establishes for the purpose of this suit a valuable property right in the company, which should be protected and enforced in some appropriate manner by this court, or through its receiver. The purpose for which the intervention of the court is invoked in this suit is not necessarily that

decrees be made herein, respecting such transaction, of which complaint is made, but that full and complete relief be afforded to the corporation against the frauds, neglects, and wrongdoings—breaches of duty—of its directors and officers. This is not a case in which the title to the corporate property is vested in the directors, and it is sought to affect it—transfer title or otherwise. The property, rights of action, and remedies for wrongs sustained by the corporation are vested in the corporate entity, which is unable to assert or enforce them or protect its property, by reason of the antagonistic relation assumed by its officers and directors. The condition presented by the record is somewhat similar, in this respect, to that dealt with in Lowenthal v. Georgia Const. & P. R. R. Co. (D. C.) 233 Fed. 1010. The defendant railroad company executed a deed to the Columbia Trust Company, of New York, to secure a large bonded indebtedness. The plaintiff held $6,000 of the bonds, upon which default had been made in payment of interest. He called upon the trustee to take action for the foreclosure of the trust. The trustee declined to act. The plaintiff, among other things, alleged that the corporation was insolvent, etc. Upon a motion to dismiss the bill, because the trust company was not a party, Judge Speer—quoting rule 39—said:

"The contention that the bill must be dismissed because the trustee is not made a party defendant is equally unfounded. The trustee is a corporation and a citizen of New York. It is not found in this district, and does not voluntarily appear. But the railway property is here, and to this the lien and mortgage securing plaintiff's bonds inheres. Here, also, is the defendant corporation, a corporation of this state. In such cases the court may entertain jurisdiction and proceed to the trial and adjudication of the suit between the parties who are properly before it; but the judgment and decree rendered therein shall not conclude or prejudice other parties not legally served with process, nor voluntarily appearing to answer. * * * Obviously, to join the trustee as a party, as a citizen of another state, at this time, when it cannot be served, would be to hazard the jurisdiction of the court to grant preliminary relief now sought."

It is undoubtedly true, as argued by counsel for defendants, and sustained by the abundant authority cited by them, that "when a decree will directly affect a person or his rights he must be a party to the proceeding, regardless of any question of estoppel." The rule in regard to the necessity for joinder of parties in suits in equity is stated by Chief Justice Marshall in Elmendorf v. Taylor, 10 Wheat. 167, 6 L. Ed. 289:

"In the exercise of its discretion, the court will require the plaintiff to do all in his power to bring every person concerned in interest before the court. But, if the case may be completely decided as between the litigant parties, the circumstance that an interest exists in some other person, whom the process of the court cannot reach, as if such party be a resident of some other state, ought not to prevent a decree upon its merits. It would be a misapplication of the rule to dismiss the plaintiff's bill because he has not done that which the law will not enable him to do."

See Shields v. Barrow, 17 How. 130, 15 L. Ed. 158.

In Barney v. Balto. City, 6 Wall. 280, 18 L. Ed. 825, Mr. Justice Miller says:

"The learning on the subject of parties to suits in chancery is copious, and within a limited extent the principles which govern their introduction are

flexible. There is a class of persons having such relations to the matter in controversy, merely formal or otherwise, that, while they may be called proper parties, the court will take no account of the omission to make them parties. There is another class of persons whose relations to the suit are such that, if their interest and their absence are brought formally to the attention of the court, it will require them to be made parties, if within its jurisdiction, before deciding the case. But, if this cannot be done, it will proceed to administer such relief as may be in its power between the parties before it. And there is a third class, whose interest in the subject-matter of the suit, and in the relief sought, are so bound up with that of the other parties, that ther legal presence as parties to the proceeding is an absolute necessity, without which the court cannot proceed. In such cases the court refuses to entertain the suit, when these parties cannot be subjected to its jurisdiction."

It would seem that the instant case is within the second class. The plaintiff alleges that, by reason of the fraudulent and wrongful conduct of its majority stockholders and managing officers, the corporate property has been dissipated and its business prejudiced; that rights of action have accrued to the corporation against such officers. These transactions are set forth in the bill and admitted for the purposes of this discussion. The bill further charges that the president, directors, and secretary and treasurer, whose duty it is to prosecute such actions as may be necessary to protect the rights of the corporation, occupy in respect to such transactions antagonistic relations to the corporation and its rights. It so happens that the suit to redress the wrongs and enforce the rights of the corporation must be brought against those whose duty it is to bring and prosecute them to judgment. The plaintiffs bring the corporation and one of the managing officers before the court, and seek such relief as it may be in its power to grant. They challenge the power of the court to grant any relief, and demand that, in the face of the allegations in the bill, admitted to be true, the suit be dismissed because two other persons, also directors, who are beyond the jurisdiction of the court, are not made parties, and that if made parties, by reason of the place of their residence, the court would be without jurisdiction to proceed. Conceding that, without their presence, or the presence of Geo. L. Adams, full and complete relief in respect to one of the transactions of which complaint is made, cannot be granted, we do not perceive any valid reason why, with the corporation before the court, it may not proceed to investigate the truth of the allegations of the bill for the purpose of ascertaining whether any relief may be granted. If it shall appear that the corporation has sustained injury by the conduct of its officers, why may not a receiver be appointed, with direction to institute such suits in equity or actions at law as may be necessary to protect the interests and enforce the rights of the corporation? For that purpose we are of opinion the court has before it the essential necessary parties. The decree would not prejudice the right of the nonresident persons, in such actions, to deny and demand proof of the allegations against them. In dismissing the bill for nonjoinder of these parties there was error.

[4] Defendants suggest that, conceding the attack on the bill is not sustained, the court, by an examination of the answer, will learn that full and complete denials, sustained by exhibits attached, are

made, and that the decree, for that reason, should be affirmed. It is held that the motion to dismiss for nonjoinder of parties must be disposed of upon the allegations of the bill, without the aid of any allegations in the answer. Bogert v. Southern Pac. Co. (D. C) 211 Fed. 776: By equity rule 29, demurrers and pleas are abolished; defenses must be made either by a motion to dismiss or by answer. In this case defendants answered, and depositions by defendants were taken. While it is within the discretion of the court to entertain a motion to dismiss for want of equity apparent upon the face of the bill, at any time before the hearing, the rule contemplates that it be made before the answer is filed:

"If the defendant move to dismiss the bill or any part thereof, the motion may be set down for hearing by either party upon five days' notice, and if it be denied, answer shall be filed within five days thereafter, or a decree pro confesso entered."

The defendant may not, by filing his answer, move to dismiss upon denials of the allegations of the bill, or by new matter set up in his answer. The motion must be heard and decided upon the allegations of the bill, as upon demurrer. The rule which prevails in courts of equity, in disposing of motions to dismiss because the bill does not set up facts sufficient to constitute a cause of action, is to overrule the motion, and let the case go to hearing, unless it is founded upon an absolutely clear proposition that, taking the allegations to be true, the bill must be dismissed at the hearing. Rallston Steel Car Co. v. Nat. Dump Car Co. (D. C.) 222 Fed. 590.

For the reasons stated, the decree dismissing the bill must be reversed, and the cause proceed to hearing.

Reversed.